UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
ROSARIO M. DELAROSA,
                         Plaintiff,

             -v-

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,
                         Defendants.
———————————————————————

21-CV-4051 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    In this age discrimination case, *pro se* Plaintiff Rosario DeLaRosa alleges that the New York City Department of Education, the City of New York, and Yecenia Delarosa each violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* She brings disparate treatment claims, retaliation claims, and hostile work environment claims. Defendants move to dismiss for failure to state a claim. The motion is granted in part and denied in part.

**I.    Background**

    The following background comes from the allegations in the amended complaint, which "are assumed to be true." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021).

    **A.    Factual Background**

          **1.    Initial Allegations**

    Plaintiff Rosario DeLaRosa is 65 years old. (*See* Dkt. No. 12 ("FAC") ¶ 1.) In September 1997, she started as a social studies teacher employed by the New York City Department of Education ("DOE"). (*See id.*) In September 2005, she became an assistant

1

principal at Gregorio Luperon High School.  (*See* FAC ¶ 2.)  There are two other assistant principals at the school, and they are both less than 40 years old.  (*See* FAC ¶ 5.)

In November 2016, Defendant Yecenia Delarosa took over as principal at the school.  (*See* FAC ¶ 3.)  She is 47 years old.  (*See id.*)  The amended complaint catalogues incidents between Plaintiff and Principal Delarosa from the time of her hiring to the present.  Broadly, the amended complaint relates three sources of conflict between Plaintiff and Defendant Delarosa.  First, Plaintiff alleges that Principal Delarosa has harassed her.  According to the amended complaint, in 2017, Principal Delarosa began harassing Plaintiff "with insulting emails and text messages."  (FAC ¶ 6.)  Since then, Principal Delarosa has "ridiculed and undermined [Plaintiff] verbally and in writing via email, including with teachers and other colleagues."  (FAC ¶ 14.)  Most notably, in November 2019, Principal Delarosa allegedly sent Plaintiff a letter accusing Plaintiff of slander, abusing Plaintiff's administrative powers, and referring her to a therapist.  (*See* FAC ¶ 9.)  The letter also allegedly accused Plaintiff of using the school's cameras to check on teachers and of being responsible for allowing an intruder into the school building.  (*See id.*)

Second, Plaintiff alleges that Principal Delarosa has isolated her.  She alleges that Principal Delarosa meets with the younger assistants but has only ever met with Plaintiff once.  (*See* FAC ¶ 28.)  She further alleges that "[n]one of the decisions regarding the [d]epartments [Plaintiff] supervise[s] are shared with [her]." (FAC ¶ 22.)  At one point, during a parents' association meeting, Principal Delarosa allegedly introduced "her team" to the parents but did not include Plaintiff even though she was present at the meeting.  (*See* FAC ¶ 10.)  Principal Delarosa then did not talk to Plaintiff for a month, even when Plaintiff addressed her.  (*See id.*)

Third, Plaintiff alleges that Principal Delarosa has removed her responsibilities over time.  In September 2018, Principal Delarosa took away Plaintiff's "supervisory responsibilities over

the math department, the physical education department, and the music and art departments," as well as "the robotics program," leaving her with "supervision over eight teachers at the school." (FAC ¶ 7.)  In August 2019, Principal Delarosa took away Plaintiff's "College Board supervisory responsibilities," leaving her with only the responsibilities "to administer the AP exams and the PSAT exam."  (*Id.*)  On April 11, 2020, Principal Delarosa took away Plaintiff's "duties regarding administration of the AP exams."  (FAC ¶ 12.)  Plaintiff alleges that a younger teacher does that now instead.  (*See* FAC ¶ 19.)  Further, Plaintiff alleges that after being involved with "the College Access for All [P]rogram" for many years, she was "not invited to apply for" it, and "excluded" from the program, so that she, unlike the other participating assistant principals, could not "receive[] extra monies for per session activities."  (FAC ¶ 13.)

          **2.**       **Post-SDHR Allegations**

On April 24, 2020, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR") relating these incidents.  (FAC ¶ 4.)  The amended complaint alleges that Principal Delarosa subsequently retaliated against her.  (*See* FAC ¶ 15.)  For example, on July 16, 2020, Principal Delarosa invited the two other assistant principals and a programmer to a meeting with a committee about safely reopening the school, but she "excluded" Plaintiff. (FAC ¶ 16.)  On August 18, 2020, Principal Delarosa allegedly converted Plaintiff's office "into an isolation room for suspected COVID-19 cases, and all of [Plaintiff's] personal belongings were dispersed and placed in a closet and [Plaintiff's] desk placed in the school lobby." (FAC ¶ 17.)  In September 2020, Principal Delarosa took away Plaintiff's "economics and government classes."  (FAC ¶ 18.)  In February 2021, Principal Delarosa included data "aligned to Regents exams" in Plaintiff's evaluation, even though all Regents exams had been cancelled. (*See* FAC ¶ 21.)  That month, Principal Delarosa also directed the 11th graders to address issues involving class orientation to another, younger assistant principal, even though Plaintiff was "in

charge of the 11th grade." (FAC ¶ 23.) Finally, Principal Delarosa stated that people with accommodations should not be in the building, when all students were remote, and Plaintiff was the only administrator with accommodations working remotely that year. (*See* FAC ¶ 24.) Principal Delarosa later allowed other faculty members with accommodations to report. (*See id.*)

### 3. Post-Complaint Allegations

Plaintiff filed her initial complaint on May 3, 2021. (*See* Dkt. No. 1.) Plaintiff's amended complaint alleges that on May 20, 2021, Principal Delarosa gave work to the two younger assistant principals "for summer school for a few weeks for the upcoming summer." (FAC ¶ 41.) Plaintiff was "not assigned any summer work." (*Id.*) After Plaintiff told Principal Delarosa that she was interested in summer work, Principal Delarosa replied that she could not give her work because of budgetary constraints." (*Id.*)

Plaintiff alleges that Principal Delarosa was served with the complaint on June 11, 2021, and that immediately thereafter, she emailed Plaintiff a disciplinary letter. (*See* FAC ¶ 43.) Plaintiff further alleges that on June 15, 2021, Principal Delarosa emailed Plaintiff an end-of-year rating, giving Plaintiff an "Unsatisfactory" rating for the first time in her career. (*See* FAC ¶ 45.)

### B. Procedural History

The amended complaint asserts disparate treatment, hostile work environment, and retaliation claims against the New York City Department of Education, the City of New York, and Yecenia Delarosa under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.* (*See* FAC at 4-5.) Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 19.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Plaintiff is proceeding *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020.) "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* A court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see Walker v. City of New York*, 367 F. Supp. 3d 39, 50 (S.D.N.Y. 2019).

## III. Discussion

Defendants' motion to dismiss is granted in part and denied in part. Plaintiff has stated a disparate treatment claim under the ADEA at least from allegations that Defendants (i) excluded her from a program; and (ii) denied her summer work. Plaintiff has also stated a retaliation claim under the ADEA from allegations that Defendants (i) denied her summer work and (ii) gave her

a negative evaluation. But Plaintiff has not stated a hostile work environment claim. Plaintiff's parallel claims under state law survive to the same extent, except as noted below.[1]

### A. Disparate Treatment Claims

Plaintiff has stated a disparate treatment claim under the ADEA, NYSHRL, and NYCHRL from allegations contained in the amended complaint. The ADEA provides that an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In an age discrimination case, to survive a motion to dismiss, a plaintiff need only "plausibly allege that she is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019) (quotation marks omitted). "[T]o defeat a motion to dismiss . . . an ADEA plaintiff must plausibly allege that he would not have [suffered the adverse employment action] but for his age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021). "Discrimination claims under the NYSHRL are largely subject to the same analysis." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014). The NYCHRL does not require a plaintiff to identify a "materially adverse employment action[]." *Mihalik v. Credit Agricole Chevreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).

---

[1] Plaintiff has withdrawn her claims against the City of New York. Further, Plaintiff cannot pursue individual liability under the ADEA, see *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (summary order), so the ADEA claims against Yecenia Delarosa are also dismissed. Finally, Plaintiff has not alleged that she filed a notice of her NYSHRL and NYCHRL claims against the DOE, see N.Y. Educ. Law § 3813(1); *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2012), so the state-law claims against the DOE are dismissed as well.

Defendants move to dismiss the disparate treatment claim on the grounds that Plaintiff has not identified an adverse employment action or raised an inference of discriminatory intent. (*See* Dkt. No. 21 ("Defs.' Memo") at 12-17.)  A plaintiff alleges an adverse employment action under the ADEA if she raises an inference that she has "endure[d] a materially adverse change in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).  Such changes include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*  As for discriminatory intent, an inference of such intent "can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

The amended complaint adequately alleges at least two adverse employment actions supported by an inference of discriminatory intent.  First, the amended complaint alleges that Plaintiff had been involved with a college readiness program called "College Access for All" for "many years," but Principal Delarosa "excluded" her from the program.  (FAC ¶ 13.)  Instead, Principal Delarosa gave younger assistant principals "extra monies for per session activities" involving the program.  (*See id.*)  Such exclusion amounts to a "material loss of benefits." *Kassner*, 496 F.3d at 238.  And the "more favorable treatment" of younger assistant principals raises an inference of discriminatory intent. *Littlejohn*, 795 F.3d at 312; *see Alvarez v. New York City Dep't of Educ.*, No. 20-CV-255, 2021 WL 1424851, at *9 (S.D.N.Y. Apr. 15, 2021). Second, Plaintiff alleges that Principal Delarosa gave work to the two younger assistant

7

principals "for summer school for a few weeks for the upcoming summer" but denied Plaintiff summer work. (*See* FAC ¶ 41.) That denial, which prevented Plaintiff from earning additional wages, amounts to an adverse change. *See Kassner*, 496 F.3d at 238. And such differential treatment raises an inference of discriminatory intent. *See Littlejohn*, 795 F.3d at 312; *Alexander v. New York City Dep't of Educ.*, No. 19-CV-7023, 2021 WL 7027509, at *6 (S.D.N.Y. Nov. 30, 2020). Because at least some of Plaintiff's allegations make out a disparate treatment claim, that claim survives.

      B.      **Retaliation Claims**

Plaintiff has stated a retaliation claim under the ADEA, the NYSHRL, and the NYCHRL based on some allegations contained in the amended complaint. The ADEA makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [section 623 of the ADEA." 29 U.S.C. § 623(d). To survive a motion to dismiss, a plaintiff must plausibly plead "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 n.6 (2d Cir. 2021) (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 130 (2d Cir. 2012)). The anti-retaliation provisions in the ADEA and the NYSHRL are "analyzed under the same framework." *Shih v. JPMorgan Chase Bank, N.A.*, No. 10-CV-9020, 2013 WL 842716, at *5 (S.D.N.Y. Mar. 7, 2013). Plaintiff alleges three protected activities in the amended complaint: (i) filing a discrimination charge with the New York State Division of Human Rights ("NYSDHR"); (ii) filing a second discrimination charge with NYSDHR; and (iii) filing this federal action. (*See, e.g.*, FAC ¶¶ 15, 40, 48.)

Defendants move to dismiss the retaliation claim on the ground that Plaintiff has not adequately pleaded a causal connection between a protected activity and any adverse employment action.  (*See* Defs.' Memo at 20-24.)  For the reasons set forth in Defendants' memorandum, most of Plaintiff's allegations indeed do not raise an inference of causation.  "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).  This means that a plaintiff must plausibly plead that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful actions or actions of the employer."  *Lively*, 6 F.4th at 303 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 357 (2013)).  This causal connection may be alleged "by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."  *Id.* at 307-08.  But it must be alleged.

Plaintiff articulates a causal connection based on timing alone (*see* Opp'n Memo. at 29), and such temporal proximity must be "very close" in time.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam).  "[C]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 688 (S.D.N.Y. 2020); *see Lively*, 6 F.4th at 307-08 (five-month gap).  Plaintiff does not allege an adverse employment action within three months of the date when she filed her first or second charges with the NYSDHR.  She attempts to do so in her opposition to the motion to dismiss, but she identifies only a "sarcastic[] email" in response (Opp'n Memo. at 28), which is not an adverse employment action, *see, e.g.*, *Zoulas*, 400 F. Supp. 3d at 55.

Plaintiff has, however, alleged two adverse employment actions within three months of the date when she filed her federal complaint on May 3, 2021.  First, the amended complaint

9

alleges that Principal Delarosa denied Plaintiff summer work — and assigned that summer work to two other younger assistant principals — on or around May 20, 2021. (*See* FAC ¶ 41.) Second, the amended complaint alleges that Principal Delarosa gave Plaintiff an end-of-year rating of "Unsatisfactory" on June 15, 2021. (*See* FAC ¶ 45.) Plaintiff's opposition to Defendants' motion to dismiss further states that the rating "resulted in her being barred from working and earning per session income."[2] (*See* Dkt. No. 24 ("Pl.'s Opp'n) at 21.) "[A] plaintiff's inability to pursue per session work as a result of poor performance reviews rises to the level of an adverse employment action." *Zoulas*, 400 F. Supp. 3d at 54 (collecting cases). Such allegations adequately plead a causal connection that supports a retaliation claim.

    **C.**    **Hostile Work Environment Claims**

Plaintiff has not stated a hostile work environment claim under the ADEA, NYSHRL, and the NYHCRL. To establish a hostile work environment claim under the ADEA, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner*, 496 F.3d at 240. At the motion to dismiss stage, a plaintiff "must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected class]." *Patane v. Clark*, 508 F.3d 106, 103 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). Courts consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening

---

[2] Because Plaintiff is proceeding *pro se*, it is appropriate to consider "factual allegations made . . . in [her] papers opposing the motion" to dismiss. *Walker*, 717 F.3d at 122 n.1; *see Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.*

Taken separately or together, the allegations in the amended complaint do not state a hostile work environment claim. The alleged comments from Principal Delarosa, though contentious, do not reflect intimidation, ridicule, or insult relating to a protected characteristic. *See, e.g.*, *Siclari v. New York City Dep't of Educ.*, No. 19-CV-7611, 2020 WL 7028870, at *5 (S.D.N.Y. Nov. 30, 2020); *Ardigo v. J. Christopher Capital, LLC*, No. 12-CV-3627, 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013). Even if such comments were age-related, the amended complaint does not allege that the comments "drew a direct link" between any discriminatory stereotypes and an adverse employment decision. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). Nor does the alleged isolation establish the kind of severity that characterizes a plausible hostile work environment claim. *See, e.g.*, *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015); *Alfano v. Costello*, 294 F.3d 365, 379-80 (2d Cir. 2002) (collecting cases). Accordingly, Plaintiff's hostile work environment claim is dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Defendants shall file answers to the surviving claims within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to terminate the City of New York from this action. The Clerk is directed to mail a copy of this Opinion and Order to the *pro se* party in this matter.

SO ORDERED.

Dated: July 14, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge